**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THOMAS P. KOVACS, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 19-18437 (SDW) <br><br><br> **OPINION** <br><br><br> August 6, 2020 |

**WIGENTON**, District Judge.

Before the Court is Plaintiff Thomas P. Kovacs's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Richard West's ("ALJ West") denial of Plaintiff's claims for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ West's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.      PROCEDURAL AND FACTUAL HISTORY**

     **A.      Procedural History**

Plaintiff filed applications for DIB and SSI in January 2015, alleging disability as of July 1, 2010.  (D.E. 6 (Administrative Record ("R.")) at 15, 123–24, 291–92.)  The Social Security Administration denied Plaintiff's applications at the initial and reconsideration levels.  (R. 163–67, 170–75.)  Plaintiff appealed, and ALJ West held a hearing on December 1, 2017, followed by a supplemental hearing on July 20, 2018.  (R. 35–84.)  On September 21, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled.  (R. 12–34.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. 1–6.)  Plaintiff now requests that this Court reverse the Commissioner's decision and remand for further proceedings.  (D.E. 9 at 21.)

     **B.      Factual History**

Plaintiff is sixty-five years old and lives in Oak Ridge, New Jersey.  (R. 291, 362.)  He has a GED and computer training; he previously worked as a computer user support analyst for Samsung Electronics as a lead worker/manager in a call center, where he managed six to twelve people.  (R. 55, 68–69, 364, 450, 936.)  He was fired in May 2008, which he claimed was due to symptoms of depression.  (R. 52, 71, 76–77, 363, 935–36.)

Plaintiff alleged disability as of July 2010 due to depression, lack of confidence, social anxiety, back pain, and arthritis.  (R. 363, 377, 382, 419, 435.)  He also reported difficulty with personal care and household chores, especially because of his hoarding behavior.  (R. 378–79, 404–09, 418, 435, 456, 1059, 1141.)  He alleged difficulties with completing tasks, concentrating, and getting along with others.  (R. 382, 412, 421.)  However, he sometimes went to the movies and spent time with his son, drove a car, went shopping, attended several mental health groups as

part of his treatment, had hobbies like reading and playing video games, and occasionally went out to bars to drink and to socialize. (R. 378–90, 407–11, 457, 764, 783, 789, 792, 850, 1059, 1108, 1141.) The record demonstrates that Plaintiff met with numerous doctors between 2009 and 2018 to seek treatment for the medical issues associated with his disability claim. (*See, e.g.*, R. 583–627, 758–63, 797–801, 1058–71.) The following is a summary of the medical evidence.[1]

Kathleen L. Kilcoyne, A.P.N. ("Nurse Kilcoyne") treated Plaintiff regularly between July 2013 and April 2014 at St. Clare's Behavioral Health ("St. Clare's"). Nurse Kilcoyne diagnosed Plaintiff with depressive disorder, generalized anxiety disorder, mild alcohol disorder, and narcissistic personality disorder with antisocial traits, and prescribed medication. (R. 781–92, 1058–71, 1102–18, 1140–48.) Despite Plaintiff's sad moods and social anxiety, on most mental status examinations, Plaintiff appeared neatly and casually dressed. (R. 782, 1063, 1103, 1141, 1145.) He was alert and oriented, his behavior was calm and in good control, his thoughts were generally coherent and logical, he denied hallucinations and delusions, his concentration was mostly good, his memory was intact, his eye contact was fair to good, and his judgment and insight were usually fair, although his judgment was sometimes described as poor due to his continued occasional alcohol use. (R. 765–92, 1066, 1105–17, 1141–47.) On July 30, 2013, Nurse Kilcoyne found Plaintiff to have a Global Assessment Functioning ("GAF")[2] score of 55, which she noted was his highest GAF score in the past year. (R. 1064.)[3]

---

[1] This Court summarizes only the evidence regarding Plaintiff's mental health impairments, as Plaintiff does not appeal the ALJ's analysis of the medical evidence regarding his physical impairments.

[2] A GAF score is a "clinician's rating[] of an individual's overall psychological, social and occupational functioning, on a scale of 0 to 100. A rating of 50 is the highest score given that still indicates serious symptoms or any serious impairment in social, occupational, or school functioning." (R. 23.)

[3] Earlier that month, Kathleen Schilling, N.P. ("Nurse Schilling"), had evaluated Plaintiff and found him to have a GAF score of 45–50. (R. 1067–71.)

Kim Arrington, Psy.D. ("Dr. Arrington"), performed a psychological evaluation of Plaintiff in December 2013. (R. 793–96.) Plaintiff was cooperative and his manner of relating, social skills, and overall presentation were adequate. (R. 794.) His motor behavior was lethargic and his mood and affect were dysphoric, while his judgment was fair to poor due to reported mood fluctuations. (R. 794–95.) However, his memory skills were only mildly impaired and his attention and concentration were intact. (R. 795.) His insight was fair and his intellectual functioning was average. (*Id.*) His mode of living was limited in some areas, as he reported only taking showers twice a week, lacking motivation to clean his house, and having difficulty managing money due to overspending when he had too much energy. (*Id.*) However, he was able to travel independently, read, use a computer, and visit his sister or talk to her on the phone. (*Id.*) Dr. Arrington diagnosed Plaintiff with bipolar disorder, panic disorder with agoraphobia, alcohol abuse, and cannabis abuse. (*Id.*) Dr. Arrington opined that due to Plaintiff's poor motivation, he would have difficulty learning new tasks and would struggle to perform simple tasks independently, but that he would be able to follow and understand simple instructions, maintain attention and concentration, and keep a regular schedule. (*Id.*)[4]

Edward Collopy, M.D. ("Dr. Collopy"), a psychiatrist at St. Clare's, evaluated Plaintiff between July 2014 and September 2015. He reported that Plaintiff's medication was generally effective and that he was cooperative, had an appropriate affect, was goal oriented, was not psychotic or suicidal, and was alert and oriented. (R. 841–64, 921.) Dr. Collopy also reported that Plaintiff's anxiety made it "difficult for him to engage in [an] employment setting." (R. 812.)

Between November 2015 and October 2016, Michael Von Poelnitz, M.D. ("Dr. Von Poelnitz"), a psychiatrist at St. Clare's, took over from Dr. Collopy to address Plaintiff's

---

[4] In April 2014, Nurse Kilcoyne noted that Plaintiff had decreased anxiety and was feeling calmer. (R. 1116.)

4

complaints of anxiety and feeling overwhelmed. (R. 935–38, 984–87, 1072–1100, 1243–44, 1249–51.) On most examinations, Dr. Von Poelnitz noted that Plaintiff was cooperative, goal-directed with no thought disorder, and had fair insight and judgment. (R. 935, 938, 1072–85, 1243–44, 1251.) Plaintiff had some vague suicidal ideation at times, but no suicidal plans. (R. 935, 987, 1072–83, 1243.) Plaintiff was slightly lethargic at some examinations, but was fully awake at others. (R. 936, 938, 1081, 1083.) Plaintiff was reportedly jovial and funny at one moment but appeared depressed at the next. (R. 1076, 1081–82, 1250–51.) Plaintiff told Dr. Von Poelnitz that he used his computer often, watched Netflix, and spent a lot of time reading, which were activities that helped focus his mind. (R. 938, 984, 986.)

In October 2016, Dr. Von Poelnitz noted that Plaintiff displayed no signs of overt psychosis, hallucinations, or delusions. (R. 1085.) Plaintiff expressed no emotional difficulties, was stable, and joked easily. (*Id.*) On October 5, 2016, Dr. Von Poelnitz wrote a letter to Employment and Training Services stating that Plaintiff was unable to maintain gainful employment due to his major depressive disorder. (R. 1179.)

In November 2016, Michelle L. Thorpe, M.D. ("Dr. Thorpe"), a psychiatrist at St. Clare's, took over Plaintiff's treatment from Dr. Von Poelnitz. (R. 1087–96, 1284–85, 1372.) During Dr. Thorpe's examinations, Plaintiff's mood was sometimes depressed but he was generally cooperative; his thought process was goal-oriented; he was alert and oriented; he had no hallucinations, delusions, or suicidal ideation; and he had fair to good insight and judgment. (R. 1088–93, 1285, 1372.) Plaintiff reported having difficulty socializing with others but acknowledged that he felt better with treatment. (R. 1089–93, 1372.)[5]

---

[5] In August and October 2017, Kelly Nussbauam, A.P.N., took over Plaintiff's medication management. (R. 1097–1100.) In August 2017, Plaintiff's mood was euthymic, and in October 2017, it was blunted. (*Id.*) In both examinations, however, he was alert and oriented, his concentration and focus were normal, and his eye contact and memory were both good. (*Id.*)

5

Dr. Von Poelnitz resumed treating Plaintiff in December 2017 and noted that he was doing well on the medication regimen. (R. 1487.) Plaintiff informed Dr. Von Poelnitz that his house was less cluttered, that he exercised four times a week, and that he had no symptoms to complain of except sometimes having sleep problems. (R. 1487–88.) Dr. Von Poelnitz observed that Plaintiff had the "same somewhat lackadaisical shuffling slow speech deep voice attitude about life where he finds plenty of areas to amuse himself with." (R. 1487.) Dr. Von Poelnitz stated that Plaintiff's affect was "almost like begging, longing, and yet at the same time making and standing strong on his own feet." (R. 1488.) His mood was "blas[é], but not dysphoric," and Plaintiff told Dr. Von Poelnitz that he had little motivation to make changes in his life and was not interested in digging deeper into his underlying emotions. (*Id.*)

Despite recording improvements and mild to moderate symptoms in his treatment notes, on December 5, 2017, Dr. Von Poelnitz completed a questionnaire identifying Plaintiff's mental impairments as post-traumatic stress disorder, major depressive disorder, polysubstance abuse in remission, and avoidant personality disorder. (R. 1188–91.) He indicated that Plaintiff's chronic mental disorder was "serious and persistent," existing over a period of two years. (R. 1191.) He noted that Plaintiff did not complain of any symptoms but that his prognosis was guarded due to Plaintiff's lack of motivation. (R. 1188.) Dr. Von Poelnitz opined that Plaintiff had a moderate limitation interacting with others and no more than moderate limitations in persisting, adapting in the workplace, and managing himself in the workplace. (R. 1190.) Dr. Von Poelnitz opined that Plaintiff had none or mild limitations regarding remembering, applying information, and concentrating, but estimated that Plaintiff would miss three days of work per month because of his impairments. (R. 1190–91.) Dr. Von Poelnitz noted that Plaintiff would have difficulty working

because of his unwilling attitude and low motivation, as well as Plaintiff being "comfortable with his present life situation." (R. 1191.)

The following month, Dr. Von Poelnitz reported that Plaintiff was still doing well with no complaints other than one of his pills being too hard to swallow. (R. 1431.) During the examination, Plaintiff made funny comments and was in good spirits. (*Id.*) His affect was somewhat constricted but his mood was euthymic. (*Id.*) He was neatly dressed, had no signs of hallucinations or delusions, his cognition and memory were intact, his judgment was okay, and his insight was fair. (*Id.*)

Plaintiff continued to attend therapy to help with his social anxiety in 2016 and 2017. (R. 1260–1410, 1471–94.) Therapy notes show that while he was sometimes anxious or depressed, he was frequently dressed appropriately, displayed normal behavior and speech, had good judgment and insight, his memory was intact, and he often had a calm or cooperative mood. (*See, e.g.*, R. 1294, 1339–49, 1360–80, 1392, 1400, 1407–15, 1490.) Plaintiff continued individual and group therapy through May 2018. (R. 1288–99, 1323, 1342–74, 1401.) In January 2018, Plaintiff reported to a therapist that he had attended the Women's March in New York City. (R. 1447.)

### C. Hearing Testimony

At the supplemental hearing on July 20, 2018, ALJ West heard testimony from Plaintiff as well as expert testimony from Sharon Kahn, Ph.D. ("Dr. Kahn"), a licensed psychologist, and Andrew Vaughn ("VE Vaughn"), a Vocational Expert. (R. 15, 38–54, 56, 67–82.) Plaintiff acknowledged that his symptoms and impairments improved with treatment. (R. 73–75, 80.) He noted that reading and using the computer helped him focus and that the condition of his house was improving. (R. 79–80.) However, he said that he rarely cleaned and when he did, he would

7

get frustrated and return to reading or the computer. (*Id.*) He also noted that when he helped family members with handyman-type work, the tasks took him longer to complete. (R. 81.)

Dr. Kahn testified that none of Plaintiff's mental impairments, individually or in combination, met or equaled any of the impairments in the Listing of Impairments, 20 C.F.R. 404, Subpart P, Appendix 1. (R. 39.) She testified that Plaintiff had no more than a moderate limitation in any area of functioning and that Plaintiff's substance abuse was a factor in the severity of his limitations. (R. 40–41.) Dr. Kahn confirmed that Plaintiff was capable of simple, repetitive tasks with minimal or reduced interaction with his supervisors and others, and that Plaintiff should work in an environment where there is a reduction in change or stressors. (R. 40–42.) She based her opinion on treatment records that indicated Plaintiff could read, work in the house, and attend some social events, and that he had been relatively stable with treatment. (R. 42.)

VE Vaughn testified that there was a significant number of jobs that a hypothetical individual with Plaintiff's vocational profile and residual functional capacity ("RFC"), as found by ALJ West, could perform in the national economy. (R. 56.) VE Vaughn testified that a hypothetical individual, similar to Plaintiff, who had no exertional limitations but was limited to (1) understanding, remembering, and carrying out simple instructions, (2) only occasional interaction with coworkers, supervisors, and the general public, and (3) only occasional changes to essential job functions, would be capable of performing the occupations of cleaner/housekeeper, cafeteria attendant, and presser. (*Id.*)

## II.   LEGAL STANDARD

### A.   Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

9

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B.  The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

11

404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    DISCUSSION

A.

On September 21, 2018, ALJ West issued a decision concluding that Plaintiff was not disabled from July 1, 2010 ("alleged onset date") through the date of the decision. (R. 26.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 17.) At step two, he found that Plaintiff had the following severe impairments: bipolar disorder, social anxiety, avoidant personality disorder, and a history of polysubstance abuse. (R. 18.)

At step three, however, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not "meet or medically equal the severity of the listings for these respective impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926)." (*Id.*) In order to meet this requirement, a claimant must prove that he meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02. The "paragraph B" criteria require at least one extreme or two marked limitations in any area of functioning. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.B. The ALJ relied on Dr. Kahn's supplemental hearing testimony to determine that Plaintiff's limitations were only moderate, not marked. (R. 19.) The "paragraph C" criteria require that the mental disorder be "serious and persistent," documented for at least two years, and supported by evidence of both medical treatment and marginal adjustment. *See* 20 C.F.R. 404, Subpart P, Appendix 1 § 12.02.C. ALJ West found that the record did not support Plaintiff's claim that he had significant issues adapting to changes in his environment. (R. 19.) Because ALJ West found that Plaintiff failed to satisfy either the "paragraph B" or "paragraph C" criteria, he concluded that Plaintiff did not meet the requirements in Listing 12.02. (*Id.*)

13

Prior to advancing to steps four and five, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertion levels, but with the following non-exertional limitations: understanding, remembering, and carrying out simple instructions; occasional interaction with coworkers, supervisors and the general public; and dealing with changes to essential job functions on an occasional basis. (R. 20.) ALJ West noted that while Plaintiff had a long history of mental health issues, the record indicated that he had a "positive response to treatment and medication." (R. 21.) The ALJ found that the "preponderance of the evidence shows that claimant has consistently struggled with symptoms of long-term disabilities," but that there was no period of at least twelve consecutive months where Plaintiff was unable to work because of these symptoms. (*Id.*)

Furthermore, while ALJ West found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence on the record. (R. 22.) ALJ West gave great weight to Dr. Kahn's hearing testimony, which explained that Plaintiff's conditions caused moderate limitations and that he had been relatively stable, although he did not agree with Dr. Kahn's testimony that Plaintiff's peaks of crisis "only reached this level because of drug use." (R. 23.) Additionally, ALJ West did not give significant weight to the two GAF scores contained in the record, because a GAF assessment is a "one time 'snapshot' of mental functioning that is not intended for forensic purposes." (R. 23–24.)

At step four, ALJ West found that Plaintiff was unable to perform his past relevant work as a computer user support analyst because the work requirements exceeded Plaintiff's RFC. (R. 24.) At step five, based on the testimony of VE Vaughn, the ALJ found that Plaintiff was capable

of performing other work that existed in significant numbers in the national economy, such as a cleaner, housekeeper, or cafeteria attendant. (R. 25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 26.)

B.

On appeal, Plaintiff seeks reversal and remand of the Commissioner's decision and asserts that ALJ West (1) failed to properly weigh the physicians' opinions and (2) failed to properly consider Plaintiff's "consistently low" GAF scores. (D.E. 9 at 16, 19.) This Court considers the arguments in turn and finds them unpersuasive.

First, Plaintiff contends that ALJ West committed legal error by giving insufficient weight to the opinion of Dr. Von Poelnitz, a treating physician, and giving too much weight to the opinion of Dr. Kahn, a non-treating physician. (D.E. 9 at 16.) However, the ALJ provided adequate reasoning as to why he gave Dr. Von Poelnitz's opinion only partial weight. The ALJ sufficiently developed the factual record in support of his decision, summarizing the relevant medical records and Plaintiff's activities of daily living. (R. 15–24.) The medical records show intermittent depression and social anxiety, but also show that Plaintiff was stable and demonstrated improvement through his treatment and medication. (*See* R. 21; *see also* R. 842, 942–43, 1085, 1089, 1372, 1435, 1487–88.)

To the extent that Dr. Von Poelnitz's general assessment was consistent with the record as a whole, ALJ West incorporated these findings in his RFC determination. (R. 20–24.) For example, according to Dr. Von Poelnitz's treatment notes, Plaintiff had a moderate limitation in interacting with others, none to mild limitations in understanding, remembering, applying, and concentrating, and moderate issues adapting and managing himself in the workplace. (R. 23, 1090–91.) These limitations are reflected in ALJ West's RFC determination limiting Plaintiff to

understanding, remembering, and carrying out simple instructions; occasional interaction with coworkers, supervisors and the general public; and dealing with changes to essential job functions on an occasional basis. (R. 20.)

However, Dr. Von Poelnitz's treatment notes are inconsistent with his opinion that Plaintiff would be expected to miss three days of work per month. (R. 23.) In fact, a day before Dr. Von Poelnitz opined in a medical impairment questionnaire that Plaintiff would have difficulty working, he reported that Plaintiff was well-maintained on his medication and that Plaintiff was making improvements in the care of his house, complaining of no symptoms. (R. 1487–88.) Furthermore, in Dr. Von Poelnitz's most recent psychiatric treatment report in January 2018, Plaintiff continued to report no major complaints and was feeling well enough to attend the Women's March that month. (R. 1431, 1447.) As ALJ West noted, these findings, cumulatively, along with Plaintiff's treatment records, were inconsistent with Dr. Von Poelnitz's opinion that Plaintiff would not be able to work on a sustained basis. (R. 23, 1090–91.) Accordingly, the ALJ's decision to give partial weight to Dr. Von Poelnitz's opinion was supported by the record with adequate evidence.

Plaintiff also argues that the ALJ erred in giving great weight to Dr. Kahn's medical opinion, rather than to Dr. Von Poelnitz's opinion. (D.E. 9 at 18–19.) Plaintiff contends that Dr. Kahn found his substance use to be "material," which contradicts the ALJ's finding. (D.E. 9 at 19.) However, in assessing medical evidence, "[a]n ALJ may accept some portions of a medical source's opinion while rejecting other opinions from the same source." *Connors v. Berryhill*, Civ. No. 17-1084, 2017 WL 4400758, at *5 (E.D. Pa. Sept. 29, 2017). Just as he did with Dr. Von Poelnitz's findings, ALJ West accepted some aspects of Dr. Kahn's testimony, while rejecting others. (R. 23.) The ALJ did not agree with Dr. Kahn's opinion about the impact of Plaintiff's

substance abuse but accepted her testimony that Plaintiff's conditions generally caused moderate limitations, based on the fact that Plaintiff could do activities, work in the house, read, attend social events, and had been relatively stable. (*Id.*)  Additionally, ALJ West explained that he gave great weight to the opinion of Dr. Kahn because Dr. Kahn, unlike Dr. Von Poelnitz, had the benefit of reviewing the whole record and ALJ West found her testimony consistent with the record as a whole. (*Id.*)  These were appropriate factors for the ALJ to rely on for giving great weight to Dr. Kahn's opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), (5), 416.927(c)(3), (4), (5) (setting forth the factors in deciding what weight to give a medical opinion, including supportability, consistency, and specialization of the medical source).

Finally, Plaintiff contends that the ALJ failed to appropriately consider his "consistently low" GAF scores. (D.E. 9 at 19.)  There are two instances where Plaintiff's GAF scores appear in the record.  On July 13, 2013, Nurse Schilling opined that Plaintiff had a GAF score of 45–50. (R. 1070.)  On July 30, 2013, Nurse Kilcoyne opined that Plaintiff had a current GAF score of 55, noting that prior to that finding, his highest score in the past year was 50. (R. 1064.)

The ALJ did not overlook the GAF scores, but noted that a GAF score is a mere "snapshot" of a claimant's ability to function at a particular time. (R. 23–24.)  GAF scores are not dispositive as to a claimant's disability. *See Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) ("A GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorders listings, . . . and a GAF score of 45, if credited, would not require a finding of disability." (citation omitted)).  In fact, the Third Circuit has noted that a GAF score of 50 (which Plaintiff had in this case) indicated that a claimant "could perform some substantial gainful activity." *Hillman v. Barnhart*, 48 F. App'x 26, 30 n.1 (3d Cir. 2002).  Furthermore, Plaintiff is incorrect that his GAF scores were "consistently low" (D.E. 9 at 19), since the only two GAF scores reported were

17

from evaluations in the same month. (R. 1064, 1070.) Therefore, there was adequate support for ALJ West's finding that Plaintiff's GAF scores should not be given significant weight.

Ultimately, "a reviewing court is obliged to consider the entire record, and to determine whether the evidence taken as a whole supports the administrator's decision." *Smith v. Califano,* 637 F.2d 968, 973 (1981) (Adams, J., concurring). Here, ALJ West's findings, including his weighing of Dr. Von Poelnitz's and Dr. Kahn's opinions and Plaintiff's GAF scores, were more than adequately supported by the entire record.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

                                              s/ *Susan D. Wigenton*
                                              **SUSAN D. WIGENTON**
                                              **UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:     Parties